## A89A2339. HALL v. OKEHI.
(391 SE2d 787)

BEASLEY, Judge.

Hall appeals from the trial court's grant of defendant Dr. Okehi's motion for summary judgment in this medical malpractice action.

Hall filed a complaint alleging that Dr. Okehi was guilty of medical negligence in performing an episiotomy on Hall during the delivery of her child in March 1986; that this resulted in her developing a rectovaginal fistula; and that Dr. Okehi was further negligent during the subsequent course of her treatment extending over two years until April 1988 when she changed to another doctor. During that period Hall made at least eleven office visits and Dr. Okehi performed surgery on two occasions, February 1987 and February 1988, to repair the perineum. Hall asserted that both operations were negligently and improperly conducted; that Dr. Okehi negligently failed to refer Hall to a more experienced and skilled physician to accomplish the surgery; and that Dr. Okehi intentionally misled Hall into believing that he possessed the requisite expertise to perform the surgical repairs in order to take advantage of the statute of limitation for medical negligence.

Dr. Okehi answered the complaint and, after discovery, moved for summary judgment, attaching his affidavit. It recited: he exercised that degree of reasonable care and skill required of other obstetricians and gynecologists in general acting under similar circumstances performing such treatment; he was not negligent in any manner in performing the treatment; his treatment did not cause or contribute to any injury to Hall.

Hall filed an affidavit in the form of a letter by a Dr. Daniel which was attested by a notary. Dr. Daniel stated that his evaluation was based upon review of specifically identified medical documents concerning Hall. He noted that his examination of the records "raised several serious issues related to deviation from acceptable standards of care which may have been directly related to Ms. Hall's prolonged and recurrent perineal defect."

He then made a number of detailed observations of what was done, what was not done, and what should have been done. One of the items was the failure to keep full and accurate records. Briefly summarized, there were three major areas Dr. Daniel described as instances where medical standards were not met. 1) There was no evidence that acceptable surgical technique was utilized either February 3, 1987 or February 26, 1988. "Indeed, gynecologic surgery involving any 'abscess' (26 February 1988) requires concomitant antibiotic therapy." 2) Following the initial unsuccessful perineal defect repair of February 3, 1987, exercise of prudent and proper medical judgment would have indicated referral to another more experienced and skilled

surgeon. Consultation with a qualified colleague for a second opinion should have been obtained before proceeding with further repair attempts; especially, after failure of the second attempt, "immediate consultation would have been mandatory in my professional medical opinion." 3) The method used in delivering plaintiff's child [which was described] reflected "poor obstetrical judgment"; a Caesarean section was preferable, exposing mother and infant to less traumatic delivery.

Dr. Daniel noted that there were "apparent gross deviations from acceptable standards of recordkeeping and obstetric/gynecologic care which may have directly resulted in recurrent defects in the perineal body [of plaintiff]." He concluded that Dr. Okehi's two perineal repairs "were not performed by commonly accepted gynecologic surgical techniques."

The trial court held that the affidavit of Hall's expert merely stated conclusions that Okehi's treatment did not meet the appropriate standards of care and was insufficient to raise an issue of fact. Summary judgment for Okehi was granted.

1. Okehi asserts that Dr. Daniel's affidavit was insufficient because it failed to show personal knowledge or a basis on which to form an opinion, in that all the records he referenced were not on file at the time. For this additional reason he argues that the trial court properly granted summary judgment.

Lack of personal knowledge is not a fatal defect. "[E]xpert opinion testimony is not objectionable merely because it is not based on facts within the personal knowledge of the witness." *Jones v. Rodzewicz*, 165 Ga. App. 635, 636 (1) (302 SE2d 402) (1983).

Plaintiff's expert was entitled to base his opinions upon medical records which he reviewed and would be the same facts introduced hypothetically at trial. Id. at 636. However, OCGA § 9-11-56 (e) requires that sworn or certified copies of such material be attached to the affidavit. If such medical records are not part of the record in the case, they would have no probative value. *Crawford v. Phillips*, 173 Ga. App. 517 (1) (326 SE2d 593) (1985).

Okehi contends erroneously that the code requirements and those set forth in *Crawford*, supra, *Nettles v. Laws*, 172 Ga. App. 241 (322 SE2d 546) (1984), and *Landers v. Ga. Baptist Med. Center*, 175 Ga. App. 500, 502 (333 SE2d 884) (1985), were not met. " 'An affidavit need not attach material upon which it is based if that material is part of the record in the case and is before the trial court, provided that the affidavit clearly identifies the record matter upon which it is based.' " *Hughey v. Emory Univ.*, 168 Ga. App. 239, 240 (308 SE2d 558) (1983). An affidavit may be disregarded only where it refers to documentation which is neither part of the record nor attached to the affidavit. *Landers*, supra at 502; *Nettles*, supra at 242. All documents

referenced in the expert's affidavit were part of the record prior to the hearing on the summary judgment motion.

The assertion that the medical records should be ignored for lack of certification is also meritless. The 260 pages of records from the Medical Center of Central Georgia were certified [R. 94]. Twenty-seven pages of records [R. 382 through 410] from Baldwin County Hospital and Daksha Chudgar, M. D., were vouched for in a separate document by Dr. Chudgar [R. 430]. Only eighteen pages of documents from Okehi [R. 363 through 380] were not certified, but they were supplied by defendant in response to a request by plaintiff's counsel. There are no reasonable grounds to ignore any of the documents referred to by Dr. Daniel and no basis to disregard his affidavit. *Jones*, supra. Compare *Crawford*, supra.

2. "In a medical malpractice case, a defendant-doctor's affidavit stating his expert opinion that his care of the patient met the appropriate standard of care establishes the defendant's right to summary judgment unless the plaintiff counters with a contrary opinion by an expert." *Beauchamp v. Wallace*, 180 Ga. App. 554 (349 SE2d 791) (1986), citing *Payne v. Golden*, 245 Ga. 784 (267 SE2d 211) (1980).

"[P]laintiff cannot prevail on motion for summary judgment by merely presenting a conclusory [sic] opinion that defendant was negligent or failed to adhere to the professional standard. [Cit.] She must *state the particulars*. She must establish the parameters [sic][1] of the acceptable professional conduct and set forth how or in what way the defendant deviated therefrom." (Emphasis in original.) *Loving v. Nash*, 182 Ga. App. 253, 255 (1) (355 SE2d 448) (1987). Accord *Minchey v. Zane*, 188 Ga. App. 733 (374 SE2d 225) (1988); *Martin v. Wilson*, 184 Ga. App. 196 (361 SE2d 209) (1987); *Bushey v. Atlanta Emergency Group*, 179 Ga. App. 827 (348 SE2d 98) (1986).

The trial court found that *Jackson v. Gershon*, 251 Ga. 577 (308 SE2d 164) (1983); *Hively v. Davis*, 181 Ga. App. 733 (353 SE2d 622) (1987), and *Lawrence v. Gardner*, 154 Ga. App. 722 (270 SE2d 9) (1980), are not applicable. Those decisions recognize that mathematical certainty is not required in affidavits offered to demonstrate medical negligence. Such approach is an essential factor in our consideration of whether the medical affiant set forth standards and pointed out ways in which the defendant-doctor failed to meet them.

The statements evince a failure by Okehi to follow the "parameters" of acceptable professional conduct, as described earlier.

"[E]xplicit conclusory pronouncements out of the mouths of those clothed with the mantle of evidentiary expertise are not essen-

---

[1] Although these are the terms used in the cases, a more accurate usage would be "conclusional" for "conclusory" and "standards" or "minimum requirements" for "parameters."

tial." *Lawrence v. Gardner*, supra at 724. The language in the affidavit may lack the precision indicated from a literal reading of our opinions. But utilization of a common-sense approach to its sufficiency as mandated by *Jackson v. Gershon*, supra, with a view of the proof in favor of the party opposing the motion, requires our holding that genuine issues of material fact remain. *Hooker v. Headley*, 192 Ga. App. 629 (385 SE2d 732) (1989), found similar statements by an affiant expert sufficient to withstand motion for summary judgment.

*Judgment reversed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 5, 1990.

*Pat D. Dixon, Jr.*, for appellant.
*Martin, Snow, Grant & Napier, John C. Edwards*, for appellee.